UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER DUNN,
*Plaintiff,*

v.

LISA MARTELLI,
*Defendant.*

No. 26-cv-10002-IT

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS**

LEVENSON, U.S.M.J.

INTRODUCTION

In this case,[1] Plaintiff Christopher Dunn sues his sister, Defendant Lisa Martelli, for calling him "narcissistic." Dunn's Complaint asserts claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy.

Dunn's claims arise from an email that Martelli sent in November 2018 to a lawyer who was, at that time, representing the mother of Dunn's child in a custody battle in the Connecticut courts. Martelli's letter to the lawyer described Dunn in unflattering terms and spoke glowingly of the mother. Dunn singles out as defamatory one particular sentence in Martelli's email: "I had labeled him narcissistic many years ago as he had no empathy, felt entitled, arrogant, and never wrong for his behavior."

[1] As discussed below, Plaintiff has been a litigant in other cases, outside this district. *See* Docket No. 1 ¶ 11 ("Complaint").

Martelli has moved to dismiss the Complaint. Docket No. 12. Martelli's motion is supported by an accompanying memorandum. Docket No. 13 ("Def. Mem."). Dunn has filed an opposition. Docket No. 14 ("Pl.'s Opp."). Judge Talwani has referred the motion to me. Docket No. 17. I have considered the parties' written submissions, as well as their oral arguments (heard remotely on June 11, 2026), in preparing this report and recommendation.

I recommend that the Court allow the motion to dismiss the Complaint in its entirety. As discussed below:

- The litigation privilege bars Dunn's claims. The November 2018 email was sent by a prospective witness (Martelli) to an attorney, in connection with then-pending child custody proceedings. As such, this communication falls squarely within the scope of the litigation privilege, which bars any civil claim arising from the email.
- Labelling someone "narcissistic" is a non-actionable statement of opinion. The term is widely used in a colloquial sense and, in the context of this email, neither denotes nor implies the existence of undisclosed derogatory facts. The fact that Martelli is a professional social worker does not change this analysis: the email plainly reflects that Martelli was writing in her role as sister to Dunn and aunt to the child whose custody was in dispute. The email does not refer to Martelli's professional qualifications, nor does it suggest that Martelli had conducted any professional or diagnostic examination of Dunn. Neither does the email imply that Dunn had received a clinical diagnosis.
- The non-conclusory factual allegations of the Complaint are insufficient to state a plausible claim for intentional or negligent infliction of emotional distress, or for invasion of privacy.

- The Complaint fails to state a plausible claim for relief on the speculative premise that Martelli may have made similar statements about Dunn—in contexts that might fall outside the scope of the litigation privilege—at some unknown time and place.

## I. Factual Background

For purposes of considering a motion to dismiss, I must accept as true the well-pleaded factual allegations of the Complaint. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Accordingly, the following description of the facts is derived from the Complaint and from the email that is the centerpiece of Dunn's claims, which is incorporated in the Complaint by reference.[2]

Dunn is an attorney and a co-author of children's books that are available on Amazon. Complaint ¶ 16. Dunn's sister, Martelli, is a licensed independent clinical social worker ("LICSW"). *Id.* ¶¶ 8, 12. Dunn and Martelli had not been in contact for years prior to the events precipitating this lawsuit. *Id.* ¶ 27.

[2] A copy of the email is attached to Martelli's memorandum. Def. Mem. at 16 ("Exhibit A"). Dunn refers to the email throughout his Complaint (*see, e.g.*, Complaint ¶¶ 11–14, 19–24) and adverts to "the plain language of the email" (Pl.'s Opp. at 10) in arguing against dismissal. As the First Circuit has noted,

> "[w]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *see also Clorox Co. P.R. v. Proctor & Gamble Comm. Co.,* 228 F.3d 24, 32 (1st Cir.2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court " 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint' " (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir.1996))).

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (alteration in original).

### *A. November 28 Email*

At the heart of the Complaint is an email that Martelli sent on November 28, 2018. Def. Mem. at 16 ("Exhibit A"). The Complaint identifies the recipient as "Attorney Cynthia Cartier, counsel for Bellucci-Maus, the mother of [Dunn's] child, in Connecticut family litigation." Complaint ¶ 19; *see* Exhibit A. Martelli also forwarded a copy of the email to Bellucci-Maus. *Id.* ¶ 33. In full, the body of the email reads as follows:

> Dear Atty Cartier;
>
> I am writing to support my nephew, Christopher and Kerriann who I have very good relationship with. As for my brother, Chris Dunn, I do not have any relationship with him. We have been completely estranged for most of Christopher's life and had a difficult relationship with him prior to that for most of my brother's and my adult life. Chris is estranged from his entire family. We have needed to be estranged as he could not conduct his interactions with us in a way that was not verbally abusive or aggressive. My parents kept in touch from time to time with years of no contact. They ended their relationship almost 6 years ago in response to a specific experience.
>
> He could go on for lengthy periods on phone with me angry and screaming to which we needed to hang up on him but he would feel this was unjustified. Finally, we needed to not be in contact with him. He felt he was owed my attention to him, money, support of any kind despite his behavior. I had labeled him narcissistic many years ago as he had no empathy, felt entitled, arrogant, and never wrong for his behavior. It was made clear to him if he could change his behavior we could have a relationship but he felt this was unfair and he thinks he divorced us.
>
> The fact that his whole family who gets along very well with each other as well as with Christopher and Kerriann speaks to why Christopher too has had difficulty with him. Chris alienates himself due to being very hostile, nasty, controlling, verbally abusive, and aggressive like a bully.
>
> I just want to add, our family thinks the world of Kerriann. She has tried so hard to get along with my brother for Christopher's sake. We know she has supported a relationship between Christopher and Chris. She is a terrific mother and Christopher is fortunate to have her for his mother.
>
> Please let me know if there is any specific questions you have.
>
> Regards,
>
> Lisa Martelli

Exhibit A.

Although the email makes no reference to Martelli's professional status, the Complaint asserts that the recipients of the email "were aware that [Martelli] is a licensed clinical social worker (LICSW)." Complaint ¶ 23. On this basis, the Complaint asserts that Martelli's words "would reasonably be interpreted as having been made from a position of professional knowledge or clinical expertise." *Id.* ¶ 24.

The Complaint alleges that Dunn first learned about the email on December 5, 2025, when the email "was produced by other parties in unrelated federal litigation."[3] *Id.* ¶ 39. The Complaint invokes Massachusetts law and asserts that "the statute of limitations for defamation was tolled pursuant to the discovery rule." *Id.* ¶ 42.

***B. Communications Beyond the Email***

The Complaint asserts, "[u]pon information and belief," that Martelli has used "the 'narcissistic' label and related descriptions" on other occasions "over many years preceding 2018 and continuing thereafter." *Id.* ¶ 54.

In connection with this assertion, the Complaint recounts Dunn's 2024 effort to "reconnect with his father, on his father's 83rd birthday, after more than a decade of estrangement." *See id.* ¶¶ 44–59. The Complaint contains no allegations about when, or whether, Martelli spoke with her (and Dunn's) father, or what Martelli said. On the surmise that Martelli used the "'narcissistic' label" among other disparagements, the Complaint alleges that such statements "foreseeably and proximately contributed to the breakdown of [Dunn's] 2024 attempt at familial reconciliation by placing false and damaging characterizations of [Dunn] into the family sphere." *Id.* ¶¶ 54, 57.

[3] Dunn has sued Bellucci-Maus and Attorney Cartier in the United States District Court for the District of Connecticut. *Dunn v. Bellucci-Maus et al.*, 24-cv-427, 2025 WL 2694860 (D. Conn. Sep. 22, 2025).

The Complaint also points back to 2014, when Dunn's mother executed her Last Will and Testament and did not leave anything to Dunn. *Id.* ¶ 60. The Complaint contains no allegations about when, or whether, Martelli spoke with her mother, or what Martelli said, and only recites that Martelli held a power of attorney for the mother and thus had access to her. *Id.* ¶ 63. The Complaint alleges, "[a]t the time estate decisions were being made, [Dunn] had been estranged from his family, and negative characterizations of him—including assertions involving diagnostic labels and clinical traits—were circulating among relatives." *Id.* ¶ 62. As for the connection to Martelli, the Complaint merely posits that Martelli's "2018 email reflects a continuation of those characterizations." *Id.*

## II. Legal Standards

### *A. Motion to Dismiss*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see Ruiz v. Bally Total Fitness Holding Corp*., 496 F.3d 1, 5 (1st Cir. 2007) (explaining that district courts "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom").

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A short and plain statement needs only enough detail to provide a defendant with fair notice of what the . . . claim is and the grounds upon which it rests." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation modified). But Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

"[T]o 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Ocasio-Hernandez*, 640 F.3d at 12 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (citation modified) (quoting *Iqbal*, 556 U.S. at 678).

Dismissal is appropriate when a "complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)). While the Court is required to "indulg[e] all reasonable inferences in [the plaintiff's] favor," it is not required to accept a complaint's "bald assertions" and "unsubstantiated conclusions." *Fantini v. Salem State Coll*., 557 F.3d 22, 26 (1st Cir. 2009) (first quoting *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006), then quoting *Gagliardi*, 513 F.3d at 305).

Although there is no blanket prohibition on allegations made "upon information and belief," there must be sufficient factual allegations to support the inferences embedded in such assertions. As the First Circuit has noted, "the phrase 'information and belief' does not excuse pure speculation, and a legal conclusion couched as a factual allegation is not entitled to a presumption of truth." *Lavigne v. Great Salt Bay Cmty. Sch. Bd.*, 146 F.4th 115, 127 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 1852 (2026) (citation modified).

In applying this standard, the Court "employ[s] a two-pronged approach." *Ocasio-Hernandez*, 640 F.3d at 12. At the first prong, the Court must "identify[] and disregard[] statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Id*. (citation modified). At the second prong, "[n]on-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id*. (citing *Iqbal*, 556 U.S. at 681). "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Id*. (quoting *Iqbal*, 556 U.S. at 678). This inquiry demands a "context-specific" approach, asking the Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

***B. Choice of Law***

As a preliminary matter, one might wonder whether Connecticut or Massachusetts law applies to this case. This case is founded on diversity jurisdiction, and the Complaint asserts state law causes of action arising from a statement that was sent to an attorney in Connecticut, in connection with legal proceedings in Connecticut. *See* Complaint ¶¶ 19, 75–104. Neither party addresses choice of law in their briefings, and both parties rely on Massachusetts case law to address the merits of Dunn's claims. *See, e.g.,* Def. Mem. at 5 (discussing Massachusetts case law on opinions and defamation); Pl.'s Opp. at 8–9 (same). At oral argument, Dunn suggested that Massachusetts law should apply because Martelli lives in Massachusetts, which may indicate that the email was sent from Massachusetts.[4]

[4] The Complaint is silent as to where the siblings' parents resided at the times discussed in the Complaint.

I recommend applying Massachusetts law and have done so in my analysis below. First, the parties have effectively waived any contrary position. "Where[ ] the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent [choice of law] analysis and accept the parties' agreement." *Shay v. Walters*, 702 F.3d 76, 80 (1st Cir. 2012) (quoting *Borden v. Paul Revere Life Ins. Co.,* 935 F.2d 370, 375 (1st Cir. 1991)) (alterations in original).

Second, it's doubtful whether the choice-of-law analysis makes a difference. There is very little evident conflict between Massachusetts and Connecticut law with respect to the issues in this case. As to the litigation privilege, both Connecticut and Massachusetts apply the privilege in substantially identical ways, reflecting its well-established role in American law. *See Simms v. Seaman*, 308 Conn. 523, 534 (2013) ("The principle that defamatory statements by attorneys during judicial proceedings are absolutely privileged when they are pertinent and material to the controversy is now well established in American jurisprudence."); *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976) ("We have hitherto held that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding."). Both jurisdictions apply the privilege to statements that are made in the course of judicial proceedings so long as it relates to the subject matter of that proceeding. *See Gallo v. Barile*, 284 Conn. 459, 470 (2007) ("Accordingly, we consistently have held that a statement is absolutely privileged if it is made in the course of a judicial proceeding and relates to the subject matter of that proceeding."); *Sriberg*, 370 Mass. at 108. Further, both states recognize that the privilege extends beyond the courtroom to reach preliminary communications that are relevant to a proceeding or hearing. *See Hopkins v. O'Connor*, 282 Conn. 821, 832 (2007) ("The scope of privileged communication

extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding."); *Mackie v. Rouse-Weir*, 495 Mass. 252, 261 (2025) ("Furthermore, the litigation privilege extends beyond statements that are made in the court room itself to communications preliminary to a proposed judicial proceeding." (citation modified)).

As to defamation, there are no apparent conflicts regarding the key issue: whether a statement expresses or implies a defamatory fact. Both states look to Section 566 of the Restatement (Second) of Torts (1977) and follow the general framework governing expressions of fact versus opinion. *See NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 411–12 (2020) (discussing actionable statements of fact and nonactionable statements of opinion); *Lyons v. Globe Newspaper Co*., 415 Mass. 258, 262–63 (1993) (same).

As for intentional infliction of emotional distress, the elements of this tort are the same in both states: "(1) that [a defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay v. McMahon*, 468 Mass. 379, 385 (2014); *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000) (same).

There are some differences between Massachusetts and Connecticut law with respect to negligent infliction of emotional distress. Under Connecticut law, "the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 446 (2003) (quoting *Scanlon v. Conn. Light & Power Co.*, 258 Conn. 436, 446 (2001)). By contrast, under Massachusetts law, the elements of the

claim are: "(1) negligence; (2) emotional distress; (3) causation; (4) *physical harm manifested by objective symptomatology*; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Sullivan v. Bos. Gas Co.*, 414 Mass. 129, 132, (1993) (emphasis added) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). The main difference is that Massachusetts requires proof of physical harm, whereas Connecticut law only requires emotional distress that might result in illness or bodily harm. *Compare Payton*, 386 Mass. at 556 ("We therefore conclude, on the basis of the preceeding [sic] analysis, that in order for any of these plaintiffs to recover for negligently inflicted emotional distress, she must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress."), *with Carrol*, 262 Conn. at 448 ("The only requirement is that the distress *might* result in illness or bodily harm."). As explained below, however, Dunn would not fare any better even if he had advocated for the use of Connecticut law. The Complaint is thin on allegations of harm that could satisfy either standard, and it fails on another critical element: whether Martelli breached a duty of care and thus acted negligently.

Lastly, as to invasion of privacy, Dunn cites Massachusetts General Laws Chapter 214, Section 1B. Complaint ¶ 102. Dunn has not pointed to any similar statute under Connecticut law that would be applicable. To the extent Connecticut law might yield a different outcome, the parties have waived any such argument.

## III. Analysis of Dunn's Claims

As discussed in the following sections of this report, I recommend that the Court dismiss the Complaint in its entirety.

Dunn's claims hinge on the contents of the email his sister sent to an attorney in the course of child custody litigation. Thus, his claims arising from the email are barred by the litigation privilege. Furthermore, Dunn's claims are insufficient to state a claim for defamation,

intentional infliction of emotional distress, negligent infliction of emotional distress, or invasion of privacy. Finally, to the extent the Complaint adverts to statements that Martelli may have made at unknown times and places, in years before and after the email, such speculative and conclusory allegations do not meet the pleading threshold under *Iqbal* and *Twombly* or the baseline requirements of Rule 8.

***A. Martelli's November 28, 2018 Email***

The Complaint centers on the November 2018 email that Martelli sent to the attorney for Bellucci-Maus "in Connecticut family litigation." Complaint ¶ 19. Accordingly, a threshold issue is whether the litigation privilege bars Dunn's claims based on the email. The short, and dispositive, answer is that the email is a communication that is subject to the litigation privilege. As such, all claims arising out of statements in the email must be dismissed.

*1. Litigation Privilege*

Martelli argues that her statements in the email were made in furtherance of a judicial proceeding and that they are absolutely privileged. Def. Mem. at 8–9.

In response, Dunn contends that the email does not pertain to a judicial proceeding and that the relation of the email to the Connecticut custody litigation is a factual issue that cannot be resolved on a motion to dismiss. Pl.'s Opp. at 11.

Martelli has the better of these arguments.

a. Legal Standard

As explained by the Massachusetts Supreme Judicial Court, "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." *Sriberg*, 370 Mass. at 108. "The reason for the privilege is that it is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony

have a remedy." *Aborn v. Lipson*, 357 Mass. 71, 72 (1970). Although the litigation privilege originally developed to protect lawyers from defamation suits, its scope has been expanded to protect against a variety of claims, and against civil liability generally. *Bassichis v. Flores*, 490 Mass. 143, 151 (2022). Thus, the litigation privilege has been applied to bar claims of intentional infliction of emotional distress, negligence, and invasion of privacy. *Id*. (collecting cases).

The litigation privilege is not limited to in-court statements. Although statements must pertain to the litigation, the test is expansive. As the First Circuit has noted, "[t]he statements must be 'pertinent to the proceedings' to come within the privilege, but this requirement is to be broadly construed." *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984) (quoting *Sullivan v. Birmingham*, 416 N.E.2d 528, 531 (Mass. App. Ct. 1981)). For example, witness statements made to police or to prosecutors before trial "are absolutely privileged if they are made in the context of a proposed judicial proceeding." *Correllas v. Viveiros*, 410 Mass. 314, 321 (1991). Put differently, the privilege applies "[w]here a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration." *Sriberg*, 370 Mass. at 109.

b. Analysis

The Complaint reflects that Martelli's email was sent to an attorney who was at the time litigating a custody dispute in Connecticut family court. *See* Complaint ¶ 19. It is further evident, from the content of the email, that it pertains directly to that custody dispute. *See* Exhibit A.

Dunn does not contest that there was a pending Connecticut court proceeding involving his son at the time of the email. *See* Pl.'s Opp. at 6 ("On November 28, 2018—*the day before* an initial Connecticut family relations session concerning [Dunn]'s visitation with his son—[Martelli] sent an email to Attorney Cynthia Cartier, counsel for Bellucci-Maus." (emphasis added)).

Not only the timing, but also the contents, of the email bespeak its pertinence to the Connecticut custody proceedings. The subject line, "Re: Kerriann Belluci case" explicitly refers to the proceeding. *See* Exhibit A. The email begins: "Dear Atty Cartier; I am writing to support my nephew, . . . and Kerriann [Bellucci-Maus] . . . ." *Id*. This email is plainly directed as "support" in connection with the legal dispute referenced in the subject line. Likewise, the body of the email makes clear that Martelli's disparagement of Dunn was not offered as idle chatter, but as potential evidence in a legal proceeding. The conclusion of the email focuses on the mother's fitness and her efforts to navigate a fraught custody situation: "She has tried so hard to get along with my brother for Christopher's sake. We know she has supported a relationship between Christopher and Chris. She is a terrific mother . . . ." *Id*.

To point out the obvious, evidence about the character and temperament of a parent is directly relevant to child custody and visitation disputes. As the Connecticut Supreme Court has noted, in such cases "the court must . . . take account of the parents' past behavior, since it must evaluate their present and future parenting ability and the consistency of their parenting for the purpose of determining which parent will better foster the children's growth, development and well-being." *Yontef v. Yontef*, 185 Conn. 275, 283 (1981).[5]

Dunn does not dispute that—at least in the abstract—a parent's character is relevant to a custody dispute. He concedes that, as a general matter, "allegations concerning a parent's character could bear some relevance to a visitation dispute." Pl.'s Opp. at 11. He argues instead that Martelli's statements lay outside the scope of the litigation privilege, because "[s]uch assertions were not necessary to oppose visitation and were not tied to any identified motion,

[5] Although the issues in this case are governed by Massachusetts law, it makes sense to consider Connecticut law in assessing whether the challenged communication was pertinent to the custody litigation, which was pending in Connecticut.

pleading, or evidentiary submission." *Id.* Dunn emphasizes that, ultimately, Martelli's "statements were never presented to the court, never introduced in testimony, and were not disclosed to Plaintiff during the family proceeding. They remained extrajudicial assertions." *Id*.

As a matter of settled law, it does not matter whether Martelli's statements were ultimately presented in open court. As the Massachusetts Supreme Judicial Court ("SJC") has ruled, "application of the privilege extends beyond statements that are made in the court room itself to 'communications preliminary to a proposed judicial proceeding.'" *Bassichis*, 490 Mass. at 150. As explained by the SJC:

> On this subject Professor Prosser has said, 'Most of our courts have adopted what appears to be a standard of good faith, requiring only that the statement have some reasonable relation or reference to the subject of inquiry, or be one that 'may possibly be pertinent,' with all doubts resolved in favor of the defendant . . . .

*Aborn*, 357 Mass. at 73 (quoting Prosser, Torts (3d ed.) § 109). The SJC has unequivocally embraced the principle that encouraging candor in court proceedings requires that witnesses' statements be untainted by fear of civil liability. *See Bassichis*, 490 Mass. at 152.

As for Dunn's argument that the email was not "necessary," he offers no authority for the notion that the boundaries of the litigation privilege depend upon some hindsight assessment of "necessity." Far from adopting a "necessity" standard, Massachusetts courts have adopted a standard of "pertinence" (not necessity), and the SJC has instructed that "[t]he words 'pertinent to the proceedings' are not to be construed narrowly." *Aborn*, 357 Mass. at 73.

Dunn's assertion that the letter wasn't included in discovery during the 2018 proceeding does not change the analysis.[6] As for Dunn's assertion that the email was simply sent to an

---

[6] Dunn provides no information about discovery rules in the Connecticut court where the custody litigation was pending. There is, accordingly, no reason to presume that he was entitled to receive notice of a statement by a prospective witness who was not called to testify.

attorney and that the communication was not "meaningfully connected to legitimate litigation advocacy" (Pl.'s Opp. at 11), this defies common sense. *See Iqbal*, 556 U.S. at 679 (in considering a 12(b)(6) motion, a court must "draw on its judicial experience and common sense"). It is obvious on the face of the email that it was sent to an attorney for use in connection with pending child custody proceedings.

Accordingly, the litigation privilege bars all claims that arise from the email: defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy. The Court should dismiss all claims related to the November email.

*2. Failure to State a Claim*

Even if the litigation privilege did not bar Dunn's claims, they are nonetheless subject to dismissal for failure to state a plausible claim for relief. I will address, in turn, Dunn's claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of the right to privacy.

a. Defamation

The key issues in Dunn's defamation claim are: (1) whether the statement, "I had labeled him narcissistic many years ago as he had no empathy, felt entitled, arrogant, and never wrong for his behavior" is a statement of opinion or fact; and (2) whether as a statement of opinion it is based on or implies the existence of undisclosed facts.

i. Opinion

Under Massachusetts law, "[i]n the defamation context, an expression of 'pure opinion' is not actionable." *Piccone v. Bartels*, 785 F.3d 766, 771 (1st Cir. 2015) (alteration in original) (quoting *HipSaver, Inc. v. Kiel*, 464 Mass. 517, 526 n.11 (2013)). In other words, "a statement cannot be defamatory if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of

objectively verifiable facts." *Id.* (citation modified). "If 'the statement unambiguously constitutes either fact or opinion,' then it is a question of law for the court . . . ." *Lyons*, 415 Mass. at 263 (quoting *Myers v. Bos. Mag. Co.*, 380 Mass. 336, 339–40 (1980)). Whether a statement can reasonably be understood as fact or opinion requires a court to "examine the statement in its totality in the context in which it was uttered or published." *Cole v. Westinghouse Broad. Co.*, 386 Mass. 303, 309 (1982) (quoting *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)) . Thus:

> The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Id.* (quoting *Info. Control Corp.*, 611 F.2d at 784).

On their face, epithets such as "narcissistic," "no empathy," "felt entitled," "arrogant," and "never wrong for his behavior" are expressions of opinion and not defamatory. "Ridicule and simple verbal abuse do not give rise to liability for defamation." *Mullane v. Breaking Media, Inc.*, 433 F. Supp. 3d 102, 112 (D. Mass. 2020) (citation modified), *aff'd*, 2021 WL 3027150 (1st Cir. Feb. 26, 2021). Such expressions of opinion are "imprecise and open to speculation," and "[a]n assertion that cannot be proved false cannot be held libelous." *Cole*, 386 Mass. at 312 (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977)). For example, words such as "rude," "dumb," or "unethical" were mere "epithets," insufficient "to ground a defamation claim." *Mullane*, 433 F. Supp. 3d at 112. "Narcissism" falls into this category. Thus, in *Sheehan v. Town of Carver*, Judge Burroughs found mere epithets—not actionable defamation—in the statement "[plaintiff] is what happens when you have too much unearned money, unchecked narcissism and a desperate thirst for relevance. She truly is an

unaccomplished bozo." No. 24-CV-12347-ADB, 2026 WL 821889, at *13 (D. Mass. Mar. 25, 2026).

As used in the email, the label "narcissistic" is of a piece with Martelli's other invective. The term narcissism has long ago passed into general usage.[7] Unflattering, to be sure, but plainly non-actionable opinion. Martelli, weighing in on child custody proceedings, calls Dunn "hostile, nasty, controlling, verbally abusive, and aggressive like a bully." When Martelli's label "narcissistic" is properly read in the context of these other epithets and the personal/family anecdotes in the email, it is clearly a personal opinion. None of these characterizations can be proved, or disproved.

To be sure, the term "narcissistic" can be used in a technical, medical sense, as in the term "narcissistic personality disorder," a clinically recognized personality disorder listed in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Text Revision* (*DSM-5-TR*). But it cannot be said that the email, in whole or part, asserts or implies that Dunn has received a clinical diagnosis. Just as the email includes no reference to Martelli's professional credentials, it is also devoid of any explicitly medical language. Importantly, Martelli's email does not use the word "disorder" or "personality disorder." *Contrast Gordon v. Dalrymple*, No. 3:07-CV-00085-LRH-RAM, 2008 WL 2782914, at *4 (D. Nev. July 8, 2008) (finding triable defamation claim where a psychologist "diagnose[d] [the plaintiff] with narcissistic personality disorder, 'sociopathic traits,' and 'passive-aggressive traits.'")

[7] Christopher Lasch's 1979 bestseller *The Culture of Narcissism* launched the term into widespread usage. The Merriam-Webster dictionary defines narcissism as an "excessive love or admiration of oneself." Narcissism, Merriam-Webster's Unabridged Dictionary, Merriam-Webster, https://unabridged.merriam-webster.com/unabridged/narcissism (last visited July 23, 2026).

ii. Implied Facts

Dunn's fallback position is that, even if the word "narcissistic" expressed an opinion, a statement of opinion may be considered defamatory "where the statement implies the existence of underlying defamatory facts." *Piccone*, 785 F.3d at 771. Dunn's argument falters, however, because the statement in question does nothing of the sort. The email explicitly catalogs the character traits that Martelli attributes to Dunn, leaving no suggestion that Martelli was basing her view on other, unstated defamatory facts. In particular, there is nothing in the email to suggest that Dunn has actually been diagnosed to meet the clinical criteria for narcissistic personality disorder.

Dunn urges that Martelli's statement "implies undisclosed facts" because Martelli used the word "labeled." Pl.'s Opp. at 9. Dunn argues that the word "labeled" "implies analysis," "evaluation," and "a conclusion reached after some process of assessment." *Id*. Dunn continues: "When coupled with diagnostic criteria — 'no empathy, felt entitled, arrogant, and never wrong for his behavior' — the statement moves beyond insult and into the realm of implied clinical characterization." *Id*. According to Dunn, "[i]t is the combination — label plus criteria — that conveys the defamatory meaning[,]" and that the statement "is an assertion framed in diagnostic language, implying an evaluative foundation not disclosed to the reader." *Id*. at 10.

Just as the unadorned use of the word "narcissistic" conveys opinion, combining the term with other epithets, such as "entitled," "arrogant," and "never wrong," does not suggest or imply an assertion of fact: that Dunn has been clinically diagnosed with a psychiatric disorder. Far from suggesting that the epithet "narcissistic" rested upon some undisclosed factual assertion, it was accompanied (and explained) by the litany of factual assertions and epithets that Martelli spells out in the email. Martelli writes in the email that "he could not conduct his interactions with us in a way that was not verbally abusive or aggressive"; "[h]e could go on for lengthy periods on

phone with me angry and screaming to which we needed to hang up on him but he would feel this was unjustified"; "he had no empathy, felt entitled, arrogant, and never wrong for his behavior"; and he "alienates himself due to being very hostile, nasty, controlling, verbally abusive, and aggressive like a bully." Exhibit A. It is clear from the email that the statement in question does not imply an undisclosed clinical diagnosis that Martelli was privy to. Rather, Martelli is talking about her personal opinion of her own estranged brother.

Read in the context of then-pending child custody proceedings, the email conveys Martelli's personal opinion as Dunn's sister, and as aunt to Dunn's son. By way of contrast, expert opinions on the mental health of parties in child custody cases typically entail reports, evaluations, and the administration of tests. *See, e.g., F. S. v. J. S.*, 310 A.3d 961, 981–82 (in child custody case, holding that evidence in the record, consisting of a report, custody evaluation, the administration of several psychological tests, and a diagnosis, supported finding that defendant has "narcissistic personality disorder"), *cert. denied,* 350 Conn. 903 (2024). Nothing in Martelli's email points to any such evaluation or testing.

Dunn emphasizes Martelli's occupation as a licensed clinical social worker. The Complaint alleges that, as a licensed clinical social worker, Martelli's "use of diagnostic and clinical terminology would reasonably be understood as carrying apparent professional authority and the weight of factual or clinical assessment, rather than mere lay opinion." Complaint ¶ 23. The Complaint continues: "These statements were presented as factual, not opinion, and, given the recipients' awareness of [Martelli]'s licensure, would reasonably be interpreted as having been made from a position of professional knowledge or clinical expertise." *Id*. ¶ 24.

The email does not support Dunn's assertion that Martelli "presented herself as having personal and professional authority to evaluate [Dunn]'s psychological functioning." *Id.* ¶ 20. On

the contrary, the email does not mention Martelli's credentials or training. Nor does it include any honorific, or indication of professional licensure. *See* Exhibit A. The email appears to come from Martelli's personal account ("@yahoo.com") and is simply signed, "Regards, Lisa Martelli." *Id*. There is no "LICSW" or other professional designation. *See id*.

Nor is there anything in the contents of the email to suggest that Martelli claimed any particular clinical expertise or insight into Dunn's medical condition or diagnoses. The email does not suggest that Martelli had ever examined or tested Dunn. *See* Exhibit A. On the contrary, it describes anecdotally Martelli's interactions with Dunn in family and personal settings. *Id*. Nor is there anything to imply that Martelli had access to Dunn's private medical or diagnostic information. Indeed, the email states: "As for my brother, Chris Dunn, I do not have any relationship with him." *Id*. The mere fact that Martelli holds a professional license does not subject her to liability for expressing opinions about her brother, absent some plausible factual allegation that she falsely claimed to have made, or learned of, a clinical diagnosis.

Given that there is no defamatory assertion of fact nor implied reference to undisclosed facts, the statement does not constitute actionable defamation.

b. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

"[A] failed defamation claim cannot be recycled as a tort claim for negligent or intentional infliction of emotional distress." *Shay*, 702 F.3d at 83 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56–57 (1988)). But that's what we have here. The same factual allegations underlie Dunn's claims, whether they sound in defamation, intentional infliction of emotional distress, or negligent infliction of emotional distress. *See id*. (affirming district court's dismissal of claim for negligent infliction of emotional distress, which arose out of the same nucleus of operative facts underlying failed defamation claim).

Without regard to the viability of the defamation claim, Dunn's claims for intentional infliction of emotional distress and negligent infliction of emotional distress fail of their own weight.

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay*, 468 Mass. at 385. Extreme and outrageous behavior transgresses "all possible bounds of decency and [i]s utterly intolerable in a civilized community." *Sindi v. El-Moslimany*, 896 F.3d 1, 21 (1st Cir. 2018) (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976)). Furthermore, "Massachusetts law sets a high bar for proof of severity." *Id.* at 22.

The allegations here fall far short extreme and outrageous behavior. First of all, many of the same considerations that support the litigation privilege apply to this question. Weighing in on a custody dispute and offering a disparaging view of one parent or the other is ordinary behavior in troubled families. Second, even outside the contours of a custody dispute, hurling epithets at siblings is neither rare nor outrageous (at least in the sense that the courts must use that term). Massachusetts' recognition of tortious infliction of emotional distress does not conscript the courts to serve as referees for family squabbles. "Mere insults do not give rise to liability for intentional infliction of emotional distress." *Mullane*, 433 F. Supp. 3d at 114 (citation modified). Calling one's brother narcissistic, lacking empathy, etc., can scarcely be characterized as behavior that transgresses all bounds of decency and is utterly intolerable. In the context of sibling interactions (in which fraught conflict is by no means rare), name calling does not amount to extreme and outrageous behavior.

c. Negligent Infliction of Emotional Distress

To make out a claim for negligent infliction of emotional distress under Massachusetts law, a plaintiff must show: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton*, 386 Mass. at 557.

To establish negligence, "the plaintiff must show that the defendant owed a duty to the plaintiff and that the defendant's failure to exercise reasonable care resulted in a breach of that duty." *Lanier v. President & Fellows of Harvard Coll.*, 490 Mass. 37, 44 (2022). "Whether a duty exists is a question of common law, to be determined by 'reference to existing social values and customs and appropriate social policy.'" *Remy v. MacDonald*, 440 Mass. 675, 677 (2004) (quoting *Cremins v. Clancy*, 415 Mass. 289, 292 (1993)).

Dunn argues that Martelli breached her duty as a licensed clinical social worker by using diagnostic language, and that the foreseeable consequence was reputational harm and severe emotional distress for Dunn. As explained above, Martelli's email does not support this characterization. The email contains no reference to Martelli's licensure and no reference to a diagnosable condition (such as a personality disorder). Nor does the email suggest or imply that any professional had made such a diagnosis—it is plainly a sister's letter in support of her brother's ex.

Dunn cites neither precedent nor logic to support his contention that Martelli owed him a duty of professional care as a licensed social worker. The Complaint does not allege that Dunn was ever a client nor that Dunn ever dealt with Martelli in a professional capacity. The facts alleged in the Complaint make clear that Martelli was "off duty" (as an LICSW) when she weighed in on the Connecticut custody proceeding. Dunn cites no authority to support the notion that Martelli owed him a duty to exercise reasonable care when she used unflattering epithets to

describe her estranged brother. To the extent that Dunn suggests Martelli had a duty of care simply because she is a licensed social worker, and that such duty extended to her dealing with a sibling, he cites no authority to support his argument.

Dunn fares no better as to causation. "A plaintiff's emotional distress must follow 'closely on the heels of' the negligent act." *Miles v. Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 789 (1982) (quoting *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 518 (1980)). Here, Dunn fails to allege that any emotional distress followed closely after the allegedly negligent act that occurred in 2018, seven years before Dunn learned of the email.[8]

d. Interference with Right to Privacy

Dunn contends that "false and defamatory impressions" of his character conveyed by Martelli "were false, highly offensive, and would be objectionable to a reasonable person," and thus violated Dunn's right to privacy under Massachusetts General Laws Chapter 214, Section 1B. Complaint ¶¶ 100, 102.

Section 1B provides a cause of action for invasion of privacy. It provides: "A person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws ch. 214, § 1B.

The bulk of the Massachusetts cases under this statute concern "public disclosure of private facts about the plaintiff (even though the facts are true and no action would lie for defamation)." *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 n.16 (2005); *see Dasey v.*

[8] The Complaint is also devoid of any allegation that Dunn suffered physical harm manifested by objective symptomology, which is fatal to his case under Massachusetts law. *See Payton*, 386 Mass. at 556. Even under Connecticut law, Dunn's negligence claim would fail—there are no allegations suggestive of psychological harm that might result in illness or bodily harm. *See Carrol*, 262 Conn. at 448 ("The only requirement is that the distress *might* result in illness or bodily harm.").

*Anderson*, 304 F.3d 148, 154 (1st Cir. 2002) ("Mass. Gen. Laws ch. 214, § 1B is typically invoked to remedy 'the gathering and dissemination of information which the plaintiffs contended was private.'" (quoting *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 517 n.4 (1991)).

Dunn argues that Section 1B "is not limited to public dissemination of private facts; rather, it protects against conduct that intrudes upon or exploits personal matters in a manner that would be offensive or unreasonable to a person of ordinary sensibilities." Pl.'s Opp. at 14. The cases that Dunn cites, however, only extend to the proposition that dissemination of private *facts* may be actionable even if the disclosures reach only a limited number of people, as opposed to the public at large. *See Bratt v. Int'l Bus. Mach. Corp.*, 392 Mass. 508, 510–11 (1984) ("disclosure of private facts about an employee through an intracorporate communication is sufficient publication to impair an employee's right of privacy"); *Tower v. Hirschhorn*, 397 Mass. 581, 586–87 (1986) ("disclosure without the consent of the patient, of confidential medical information to two individuals, as alleged by the plaintiff, would be sufficient to warrant a finding of invasion of privacy").

The Complaint fails even to outline a colorable claim for invasion of privacy. As a threshold matter, the Complaint does not allege what private facts, if any, were disclosed about Dunn. The only allegation is that Martelli made false and misleading statements that "implicated" Dunn's mental health. Pl.'s Opp. at 15. Nor does the Complaint allege an unreasonable, substantial or serious interference with privacy. The statement at issue here was confined to an email sent to an attorney, and to the attorney's client, in connection with preparation for an imminent legal proceeding. Far from alleging any further dissemination, the

Complaint alleges that the statement only came to light when Dunn sued the attorney and his ex and subsequently obtained the email in discovery.

The Complaint, in short, alleges no factual basis for an invasion of privacy claim.

### *B. Statements Beyond Martelli's Email*

Recognizing that the litigation privilege poses a formidable (indeed, insuperable) obstacle to any claim based on Martelli's email, Dunn attempts to sidestep the issue by suggesting that Martelli may have said similar things at some other time. *See* Pl.'s Opp. at 6–7 ("The Complaint alleges that [Martelli]'s characterization was not confined to the 2018 email." (citing Complaint ¶¶ 43, 54, 56)); Complaint ¶ 10 ("The statements were not only made many years before any litigation by [Martelli]'s own account, but were also repeated after and outside litigation . . . .").

The central problem with Dunn's attempt to look beyond the email is the dearth of factual allegations to support a claim. The Complaint points to Dunn's estrangement from his parents as evidence that Martelli must have defamed him on some unknown occasion. Even if we were to assume that Dunn's estrangement from his parents was the result of Martelli saying bad things about Dunn—a speculative stretch to begin with—it does not follow that those bad things included a false and defamatory assertion that Dunn had been medically diagnosed as suffering from narcissistic personality disorder.

A defamation plaintiff is not required to allege his claim with the same degree of specificity as would be required for a fraud claim, which carries a heightened pleading standard under Federal Rule of Civil Procedure 9. *See Davidson v. Cao*, 211 F. Supp. 2d 264, 276 (D. Mass. 2002) ("Defamation claims are subject to the more relaxed pleading requirements of Rule 8 . . . .") (collecting cases). Nevertheless, "defendants are entitled to be informed of the basic elements of the claims against them." *Tomaselli v. Beaulieu*, No. CIVA 08-10666-PBS, 2010 WL 1460259, at *11 (D. Mass. Apr. 1, 2010), *report and recommendation adopted*, No. 1:08-

CV-10666, 2010 WL 1460261 (D. Mass. Apr. 1, 2010), *judgment entered*, No. CA 08-10666-PBS, 2010 WL 2892491 (D. Mass. July 20, 2010). Even under the generous pleading threshold of Rule 8, the Complaint here lacks anything that could be considered a short and plain statement of facts showing that Dunn is entitled to relief.

What's missing? First, the Complaint does not allege what statements were made, or how and when they were conveyed to others. Indeed, the Complaint reveals its own shortcomings when it states, "[a]lthough the specific statements conveyed to [Dunn]'s father are not yet known, the abrupt shift aligns with the defamatory characterizations [Martelli] originated and, upon information and belief, continued to communicate or reinforce." Complaint ¶ 55.

Tellingly, the Complaint acknowledges that Dunn does not even know whether any defamatory statements of the kind he posits were made. He "reserves the right to seek narrowly tailored discovery of communications, if any, in which [Martelli]'s statements or similar characterizations were repeated, relied upon, or conveyed within the family context, solely to establish damages, causation, and foreseeability of harm." *Id.* ¶ 65. Dunn simply wants to start discovery so he can look for other "communications, *if any*." *Id.* (emphasis added).

That's not what discovery is for. "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). The First Circuit has emphasized precisely this point in upholding the dismissal of a defamation claim:

> [T]o access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test—a test that helps keep defendants from wasting time and money in discovery on "largely groundless" claims. *See Twombly,* 550 U.S. at 558, 127 S.Ct. 1955 (quoting *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)) (internal quotation marks omitted). And it does no good to suggest, as Schatz seemingly does, that a judge can cast aside

> complaints "just shy of a plausible entitlement to relief" on summary judgment: because the high cost of litigation can scare defendants into settling even a weak case pre-summary judgment, a claim must have some degree of plausibility before the parties are put through their discovery paces. *See id.* at 558–59, 127 S.Ct. 1955.

*Schatz*, 669 F.3d at 56.

Here, Dunn asks the Court to infer that—on some other, unspecified occasion(s)—Martelli made the same kinds of statements as appear in the November 2018 email. Dunn rests this inference on the fact that Martelli used the word "labeled" in that email. He argues that Martelli's use of the past tense demonstrates that Martelli conveyed to others—on occasions unconnected to the Connecticut custody proceedings—roughly the same litany of unflattering descriptions as Martelli included in email: among other things, that Dunn was "hostile, nasty, controlling, verbally abusive, and aggressive like a bully." Complaint ¶¶ 23, 43; Exhibit A. Dunn points to two family interactions, a decade apart: in 2014 when his mother cut him out of her will, Complaint ¶¶ 60–66, and in 2024 when his father put conditions on their possible reconnection, *id*. ¶¶ 43–57. The putative connective tissue between these disparate events is Dunn's assertion upon "information and belief" that Martelli must have said bad things about him.

Given that we must construe the Complaint in Dunn's favor, we may read the term "labeled" to imply that Martelli actually communicated to some other person her views about Dunn's character. It does not follow, however, that such hypothetical communications were made in such a manner as to convey a defamatory accusation that Dunn had been clinically diagnosed with narcissistic personality disorder. *See Grant v. Target Corp.*, 126 F. Supp. 3d 183, 192 (D. Mass. 2015) (allowing motion to dismiss defamation claim where: "Although the inference of misinformation is plausible, the facts alleged do not plausibly suggest that any such information was communicated in a defamatory matter.").

In evaluating a motion to dismiss, the Court must "accept[ ] the complaint's well-pleaded facts as true and indulg[e] all reasonable inferences in the plaintiff's favor." *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 33 (1st Cir. 2020) (quoting *Cook v. Gates,* 528 F.3d 42, 48 (1st Cir. 2008)) (alteration in original).

Giving Dunn the benefit of the doubt—as we must under Federal Rule of Civil Procedure 12(b)(6)—it is plausible that Martelli said disparaging things about Dunn on other occasions. The problem is that such inferences do not tell us what was said, let alone spell out the circumstances or context that might render such hypothetical comments defamatory (or otherwise actionable). There is no factual scaffolding to support the Complaint's speculative inference that Martelli's "characterizations of [Dunn], including the 'narcissistic' label and related descriptions, were conveyed to [Dunn]'s father over many years preceding 2018 and continuing thereafter." Complaint ¶ 54.

Even if the Court indulges the speculative leap that Martelli's comments to her father included the use of the word "narcissistic" (and, thus, were not limited to the litany of other unflattering descriptors found in the email), it is still naked speculation to assume that such comments went beyond what we see in the email, and went so far as to include a false assertion that Dunn was subject to a medical diagnosis of narcissistic personality disorder.

Dunn's reliance on negative interactions with his mother and father cannot carry the day. It is simply too great an inferential leap to posit, on the basis of the 2018 email, that Martelli made actionable defamatory statements about Dunn in 2014, in 2024, or sometime in between. That Dunn's father said on one occasion "that he had been 'hearing only one side of the story all these years,'" does not salvage Dunn's claim. *Id*. ¶ 46. At best, this "indicat[es] exposure to negative information." *Id*.

Dunn asserts that he (Dunn) "believe[d], upon discovering the defamatory statement that [his father] was influenced by it." Pl.'s Opp. at 7. In the emotional context of family dynamics, the connection may indeed seem compelling to Dunn. For the Court, however, factual allegations pointing to causation are the sine qua non for a viable claim. In some cases, close timing will do the trick in supporting an inference of causation. In this case, however, the timeline works against Dunn. We are talking about three events spaced over the course of a decade: estrangement from mother prior to 2014; email in 2018; failed reconciliation with father in 2024. Typically, courts draw inferences about motive and causation in personal interactions by looking at intervals of days or weeks. *Cf. Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 654 (1st Cir. 2026) (drawing a causal inference based on temporal proximity, days and weeks, for retaliation claim under Title VII).

The Complaint repeatedly asserts on "information and belief" that Martelli's characterizations of Dunn, "including the 'narcissistic' label," were conveyed to Dunn's father. Complaint ¶¶ 53–55. But the Complaint offers no factual allegations from which to infer a plausible claim. "Courts across the country have found [allegations based on 'information and belief'] to be conclusory when it is not supported with sufficient facts." *Browder v. Ojikutu*, No. 1:24-CV-11588-AK, 2025 WL 2379682, at *6 (D. Mass. Aug. 15, 2025) (collecting cases), *appeal dismissed sub nom. Browder v. City of Bos.*, No. 25-1942, 2025 WL 4679095 (1st Cir. Dec. 17, 2025). "Information and belief" cannot be a stand in for "pure speculation." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012).

Dunn's assertion that the negative narrative around him was "consistent with themes [Martelli] had shared over many years," is a far cry from stating a claim for defamation. Complaint ¶ 55. As the Supreme Court noted in *Twombly*: "The need at the pleading stage for

allegations plausibly suggesting (*not merely consistent with*) [claimed misconduct] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" 550 U.S. at 557 (emphasis added) (second alteration in original). The purported "consistency" between Dunn's allegations that he has been estranged (at various times) from each of his parents and Martelli's negative characterizations of him in the email is not the stuff of a cognizable claim for relief.

To recap, the Complaint does not allege what, "if any," other communications were made. And, even assuming that Martelli said negative things about Dunn, that assumption does not provide a factual basis for further assuming that Martelli said Dunn was subject to a clinical diagnosis. There is no non-speculative factual basis for Dunn's claims of defamation, negligent or intentional infliction of emotional distress, or invasion of privacy. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

To the extent that the Complaint seeks to pursue claims arising from statements made outside the November 2018 email, it is subject to dismissal for failure to state a claim.

CONCLUSION

For the foregoing reasons, I recommend that the Court ALLOW the motion and DISMISS all counts.

/s/ Paul G. Levenson
Paul G. Levenson
U.S. MAGISTRATE JUDGE

Dated: July 30, 2026

NOTICE OF RIGHT TO OBJECT

In accordance with Rule 3 of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, the parties are advised that under the provisions of Federal Rule of Civil Procedure 72(b) or Federal Rule of Criminal Procedure 59(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health & Hum. Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).